# Exhibit A

# SUMMONS - CIVIL

JD-CV-1 Rev. 4-16
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. §§ 3-1 through 3-21, 8-1, 10-13

**See other side for instructions**

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov

| | |
|---|---|
| ☐ | "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500. |
| ☒ | "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more. |
| ☐ | "X" if claiming other relief in addition to or in lieu of money or damages. |

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* | | |
|---|---|---|---|---|
| 1 COURT STREET, MIDDLETOWN, CT 06457 | ( 860 ) 343-6400 | October Month | 16 Day | 2 018 Year |

| ☒ Judicial District | ☐ G.A. Number: | At *(Town in which writ is returnable)* (C.G.S. §§ 51-346, 51-349) | Case type code *(See list on page 2)* | |
|---|---|---|---|---|
| ☐ Housing Session | | MIDDLESEX AT MIDDLETOWN | Major:  T | Minor:  90 |

## For the Plaintiff(s) please enter the appearance of:

| Name of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| KEILY MIRA LAW, 968 Farmington Ave, Ste 208, West Hartford, CT 06107 | 433252 |

| Telephone number *(with area code)* | Signature of Plaintiff *(If self-represented)* |
|---|---|
| ( 860 ) 251-9552 | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. ☒ Yes  ☐ No | Email address for delivery of papers under Section 10-13 *(if agreed to)* info@kmlegalct.com |
|---|---|

| Number of Plaintiffs:  3 | Number of Defendants:  3 | ☒ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| **First Plaintiff** | **Name:** LESLIE NATHAN  **Address:** 115 SECOND AVENUE, WESTBROOK, CT 06498 | P-01 |
| **Additional Plaintiff** | **Name:** LYNNE NATHAN  **Address:** 115 SECOND AVENUE, WESTBROOK, CT 06498 | P-02 |
| **First Defendant** | **Name:** WELLS FARGO BANK, NA  **Address:** 7495 NEW HORIZON WAY, BLDG 4, FREDERICK, MD 21701 | D-01 |
| **Additional Defendant** | **Name:** AGENT FOR SERVICE: Corporation Service Co.  **Address:** 50 Weston Street, Hartford, CT  06120-1537 | D-02 |
| **Additional Defendant** | **Name:** WELLS FARGO HOME MORTGAGE, INC.  **Address:** MAC X2401-06T, 1 HOME CAMPUS, DES MOINES, IA 50328-0001 | D-03 |
| **Additional Defendant** | **Name:** AGENT FOR SERVICE: Secretary of the State  **Address:** 30 TRINITY STREET, HARTFORD, CT 06106-0470 | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly.  **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed *(Sign and "X" proper box)* | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Name of Person Signing at Left | Date signed |
|---|---|---|---|
| X | | Jennifer E. Mira, Esq. | 09/28/2018 |

| If this Summons is signed by a Clerk: | For Court Use Only | |
|---|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts. | File Date | |
| b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law. | | |
| c. The Clerk is not permitted to give any legal advice in connection with any lawsuit. | | |
| d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | | |

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date | Docket Number |
|---|---|---|---|
| | | | |

**CIVIL SUMMONS**
**CONTINUATION OF PARTIES**
JD-CV-2   Rev. 9-12

STATE OF CONNECTICUT
**SUPERIOR COURT**

First named Plaintiff *(Last, First, Middle Initial)*

**NATHAN, LESLIE**

First named Defendant *(Last, First, Middle Initial)*

**WELLS FARGO BANK, NA**

## Additional Plaintiffs

| Name *(Last, First, Middle Initial, if individual)*   Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|
| **LYNNE W. NATHAN, TRUSTEE, 115 Second Ave, Westbrook, CT 06498** | 03 |
| | 04 |
| | 05 |
| | 06 |
| | 07 |
| | 08 |
| | 09 |
| | 10 |
| | 11 |
| | 12 |
| | 13 |

## Additional Defendants

| Name *(Last, First, Middle Initial, if individual)*   Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|
| **HSBC BANK USA NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-8, 7495 New Horizon Way Bldg 4, Frederick, MD 21701** | 05 |
| | 06 |
| | 07 |
| | 08 |
| | 09 |
| | 10 |
| | 11 |

| | | *FOR COURT USE ONLY - File Date* |
|---|---|---|
| | 12 | |
| | 13 | |
| | 14 | Docket number |

**CIVIL SUMMONS-Continuation**

Print Form          Reset Form

RETURN DATE:  OCTOBER 16, 2018         :       SUPERIOR COURT

LESLIE NATHAN, LYNNE NATHAN         :       J.D. OF MIDDLESEX
& LYNNE W. NATHAN, TRUSTEE

V.         :       AT MIDDLETOWN

WELLS FARGO HOME MORTGAGE,         :       SEPTEMBER 28, 2018
WELLS FARGO BANK, N.A., HSBC BANK USA,
NATIONAL ASSOCIATION AS TRUSTEE FOR
WELLS FARGO ASSET SECURITIES CORPORATION,
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2007-8

**COMPLAINT**

**COUNT ONE: FRAUD BY PREDATORY LENDING AS TO WELLS FARGO BANK,
N.A. AND WELLS FARGO HOME MORTGAGE**

      1.      The plaintiffs, Lynne Nathan and Leslie Nathan are an elderly couple residing in

real property located in the Town of Westbrook, County of Middlesex and State of Connecticut

known as 115 Second Avenue (the "Property"), owned by Lynne Nathan as Trustee of the Lynne

W. Nathan Trust Agreement dated November 19, 2001 (collectively referred to herein as

"Plaintiffs").

      2.      In early 2007, Plaintiffs inquired with Wells Fargo Bank, N.A. and their home

loan division, Wells Fargo Home Mortgage (collectively referred to herein as "Wells Fargo")

about a jumbo reverse mortgage.

3.      Plaintiffs qualified for a jumbo reverse mortgage but were talked out of it by Wells Fargo and were encouraged to accept an interest only loan product with the promise that Plaintiffs could return for the jumbo reverse if Plaintiffs found the interest only mortgage did not work for them.

4.      At that time, Wells Fargo had appraised the Property at a fair market value of $1.7 million.

5.      Plaintiffs were encouraged to take the interest only loan under the guise that it would help them maintain equity in their home.

6.      In reliance on Wells Fargo's promises, on or about April 12, 2007, Plaintiffs executed and delivered a note to Wells Fargo Bank, N.A. in the amount of $560,000.00, for an interest only loan at 6.125% which was also secured by a mortgage on the Property.

7.      Plaintiffs made their monthly mortgage payments on time and without fail, even paying down the principal on the note by $13,000.00 in the first year.

8.      In or around August, 2008, as the U.S. economy faced a serious financial crisis, the Plaintiffs returned to Wells Fargo again seeking the jumbo reverse mortgage.

9.      At this time, the Plaintiffs were age 72 and 67 and desired a way to stay in their home for the remainder of their lifetime without financial distress.

10. In or around the same time, Wells Fargo had received nearly $37 billion in taxpayer bailout money with the condition of participating in the Home Affordable Modification Program (HAMP) created by the federal government to assist homeowners in avoiding foreclosure.

11. At this time, Plaintiffs were *not* in default of their mortgage *nor* seeking a modification of their loan, they simply wanted to refinance into a jumbo reverse mortgage.

12. Wells Fargo encouraged Plaintiffs to apply for a loan modification instead, stating they had bailout money that needed to be used to assist homeowners like Plaintiffs and give them a low interest rate, with a cap of three percent (3.00%). Wells Fargo also assured Plaintiffs the modification would be a quick three-month turnaround and reminded them again that Plaintiffs could return for the jumbo reverse.

13. In reliance on Wells Fargo's representations, Plaintiffs' applied for said loan modification in or around September, 2008.

14. Wells Fargo did not present Plaintiffs with a loan modification until fifteen (15) months later, on December 15, 2009.

15. During those fifteen (15) months, Plaintiffs *stayed current on their mortgage*, never missing a single payment.

16.     Although Plaintiffs remained current on their mortgage while waiting for the modification, Wells Fargo's delays put Plaintiffs in severe financial distress.

17.     Before finally receiving Wells Fargo's loan modification offer, Plaintiffs requested to revert back to their application for a jumbo reverse mortgage and were told by Wells Fargo, "we're sorry, we forgot to tell you that we stopped offering jumbo reverse mortgages at the end of 2008."

18.     Upon information and belief, Wells Fargo concealed this information from Plaintiffs so that they would apply for a loan modification.

19.     The loan modification Wells Fargo finally presented to Plaintiffs did not meet the terms originally promised.  It had a starting interest rate of 3.875% and step-ups that would eventually bring Plaintiffs back to their pre-modification interest rate, and required Plaintiffs to waive all of their rights and defenses in the event of foreclosure.

20.     Wells Fargo baited Plaintiffs with the promise of a low interest rate and then switched to a loan product Plaintiffs would not be able to sustain based on their fixed income at their advanced ages.

21.     Wells Fargo knew based on Plaintiffs' age and financial situation that they would not be able to make the payments required by the loan modification terms, however, Wells Fargo was also aware that Plaintiffs' had significant equity in the Property at that time.

22.     Plaintiffs were locked out; they could not afford to accept Wells Fargo's loan modification terms and now were unable to seek other refinance options due to Wells Fargo's delays.

23.     Blindsided by Wells Fargo's actions, Plaintiffs were forced into default in January, 2010.

24.     Upon information and belief, Wells Fargo intentionally steered Plaintiffs into a loan modification, knowingly failed to inform Plaintiffs that jumbo reverse mortgages were soon going to be unavailable and dragged out the process of refinancing/modifying their loan, putting Plaintiffs further into financial distress and increasing the interest and penalties owed.

25.     Plaintiffs repeatedly returned to Wells Fargo between January and April, 2010 requesting review of the modification proposal, wanting to know how their income and expenses were calculated and each time Wells Fargo failed to respond and provide answers.

26.     Despite repeated requests to speak to someone with authority, Plaintiffs spoke to over forty (40) different Wells Fargo representatives who, each time, could not provide Plaintiffs with information or answers.

27.     Eventually, Plaintiffs were informed by Wells Fargo that "the rules had changed" and now in order to qualify for any modification, Plaintiffs had to be in default, something Plaintiffs *had never been told before*.  This forced Plaintiffs to continue in default as

they applied again for a modification seeking the terms they had been promised.  Again, Wells Fargo assured them the application process would take only three months; that modification never came.

28.     Two short months later, on June 3, 2010, HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-8 ("HSBC") brought a foreclosure action against Plaintiffs (Docket No. MMX-CV10-6002743-S).

29.     As of the date of this foreclosure action, HSBC was not the holder or owner of the note nor was an assignment of mortgage made of record from Wells Fargo to HSBC.

30.     Plaintiffs attended 11 foreclosure mediation sessions between August 2010 and August 2011, each time offering ways to pay the arrearage, bring the loan current and/or modify the loan.

31.     Various counsel for HSBC attended the mediations and engaged in conduct which was inconsistent with the objectives of mediation; they were unprepared, delayed and failed to engage at each mediation session.

32.     In one instance, counsel for HSBC, Valerie Finney, advised the mediator Taj Ortiz that her client did not have to modify the loan and that Plaintiffs would never get a modification they could afford.

33.     Throughout the first foreclosure action with HSBC, Plaintiffs continued actively pursuing their loan modification with Wells Fargo, yet Wells Fargo repeatedly delayed the process, requesting duplicative documentation and information, refusing phone calls and providing Plaintiffs with little or false information about the status of their application.

34.     After two-and-a-half years of delays by HSBC, the foreclosure action was dismissed by the honorable Judge Holzberg as HSBC could not produce the note, an assignment of the note nor an allonge to the note proving it was the lienholder.

35.     Wells Fargo did not appeal the dismissal nor locate the note and file a motion to open the dismissal.

36.     After the first foreclosure action was dismissed, Plaintiffs tried to continue making payments on their mortgage, but Wells Fargo returned their checks.

37.     Plaintiffs also continued corresponding with Wells Fargo regarding loan modification options and submitted a total of 40+ applications and packages for modification review, dealing with different Wells Fargo representatives each time.

38.     On or about August 12, 2014, almost five years after Plaintiffs' alleged default and nearly two years since the first foreclosure was dismissed, HSBC initiated a *second* foreclosure action against Plaintiffs (Docket No. MMX-CV14-6012454-S) identical in all respects to the first matter.

39.     HSBC's counsel at that time, Victoria Forcella, refused to actively engage in the mediation process, aggressively walking out of the first mandatory mediation session before it even began.

40.     Before walking out of the mediation room, in front of Plaintiffs *and* the mediator, Attorney Forcella reiterated the same sentiment Attorney Finney had years prior, that "We will not mediate, we will not modify, we don't have to; the Property is unique, it has equity and my client wants the Property."

41.     Thereafter, HSBC informed Plaintiffs and the Court that Plaintiffs' loan was not eligible for HAMP modification due to investor requirements, something Wells Fargo had failed to tell Plaintiffs for years.

42.     The second foreclosure action ultimately resulted in a verdict of strict foreclosure, which is presently on appeal with the Connecticut Appellate Court.

43.     Wells Fargo engaged in predatory lending practices in one or more of the following ways:

> i.   Equity stripping in 2007 when it loaned Plaintiffs money based on the equity they had in the Property, regardless of their ability to repay the loan;

ii.   Misrepresenting the availability of a jumbo reverse loan, which Plaintiffs qualified for, and encouraging them to seek a loan modification instead;

iii.   Failing to inform Plaintiffs that the loan product they wanted would soon be unavailable;

iv.   Fraudulently misrepresenting that Plaintiffs loan qualified for a HAMP loan modification;

v.   Intentionally miscalculating Plaintiffs debt, income and debt-to-income ratios;

vi.   Baiting Plaintiffs with the promise of favorable loan modification terms and then switching to worse terms when they finally presented the modification, and after Plaintiffs had waited so long for the new loan that they were financially damaged and unable to refinance elsewhere;

vii.   Equity stripping in 2009, when it presented Plaintiffs with loan terms again based on the equity Plaintiffs' had in the Property and not on Plaintiffs' ability to repay the loan;

viii.  Dual-tracking by negotiating loan modifications with Plaintiffs while Plaintiffs were being sued in foreclosure by HSBC;

ix.  Misapplying payments made by Plaintiffs, resulting in higher interest and fees; and

x.  Refusing to accept payments from Plaintiffs', including efforts to bring arrearage current, which resulted in higher interest, fees and penalties.

44.     Wells Fargo's predatory lending practices resulted in a fraudulent concealment of the Plaintiffs' cause of action under Connecticut General Statutes § 52-595, thereby tolling any statute of limitations applicable to an action against Wells Fargo until the date Plaintiffs discovered that Wells Fargo engaged in the predatory lending practices.

**<u>COUNT TWO</u>:   FRAUDULENT MISREPRESENTATION AS TO WELLS FARGO BANK, N.A. and WELLS FARGO HOME MORTGAGE**

1.     Paragraphs 1 through 41 of Count One of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 1 through 41 of Count Two.

42.     From 2009 to 2015, Plaintiffs actively pursued loan modifications with Wells Fargo.

43.     Throughout those six years, Wells Fargo fraudulently misrepresented to Plaintiffs how they were calculating their income, their internal policies for modification review, what Plaintiffs' qualified for and the loan terms available to them.

44.     Throughout those six years, Wells Fargo fraudulently misrepresented to Plaintiffs that their loan *could be modified*.

45.     Had Plaintiffs been informed of the *true* modification terms available, internal policies for modification review, how their income was being calculated, and that their loan was not eligible for modification, Plaintiffs *never* would have pursued loan modification and would have sought to refinance elsewhere.

46.     Upon information and belief, Wells Fargo concealed that they would no longer be offering jumbo reverse mortgages to induce Plaintiffs to apply for a loan modification that Wells Fargo knew Plaintiffs would not be eligible for.

47.     Upon information and belief, Wells Fargo concealed that they would no longer be offering jumbo reverse mortgages to induce Plaintiffs to apply for a loan modification that Wells Fargo knew Plaintiffs could not afford.

48.     Upon information and belief, Wells Fargo concealed that they would no longer be offering jumbo reverse mortgages to induce Plaintiffs to apply for a loan modification that Wells Fargo knew would not contain the favorable loan terms Wells Fargo had promised to Plaintiffs.

49.     Wells Fargo knew that their misrepresentations were untrue.

50.     Wells Fargo made these knowingly false representations to induce Plaintiffs to rely on them and continue applying for loan modifications Plaintiffs would never receive.

51.     Plaintiffs did in fact rely on Wells Fargo's knowingly false representations to their detriment.

52.     Furthermore, once Wells Fargo made specific representations to Plaintiffs about how Wells Fargo was calculating their income and what loan terms Plaintiffs qualified for, Wells Fargo became obligated to make full disclosure on the topic of Plaintiffs application for modification, which it failed to do.

53.     Wells Fargo's predatory lending practices, including fraudulent misrepresentations and its failure to fully disclose to Plaintiffs' the consequences of applying for a loan modification, resulted in a fraudulent concealment of the Plaintiffs' cause of action under Connecticut General Statutes § 52-595, thereby tolling any statute of limitations applicable to an action against Wells Fargo until the date Plaintiffs discovered that Wells Fargo engaged in said fraudulent misrepresentations and other predatory lending practices.


**COUNT THREE:     NEGLIGENT MISREPRESENTATION AS TO WELLS FARGO
                   BANK, N.A. and WELLS FARGO HOME MORTGAGE**

1.      Paragraphs 1 through 41 of Count One of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 1 through 41 of Count Three.

42.     Paragraph 42 of Count Two of this Complaint is hereby incorporated by reference, as if fully set forth herein, and made paragraph 42 of Count Three.

43.     Throughout those six years, Wells Fargo made misrepresentations of fact to Plaintiffs regarding how Wells Fargo was calculating their income, what Wells Fargo's internal policies were for modification review, what Plaintiffs' qualified for and the loan terms available to them.

44.     Throughout those six years, Wells Fargo misrepresented to Plaintiffs that their loan *could be modified*.

45.     Had Plaintiffs been informed of the *true* modification terms available, internal policies for modification review, how their income was being calculated, and that their loan was not eligible for modification, Plaintiffs *never* would have pursued loan modification and would have sought to refinance elsewhere.

46.     Upon information and belief, Wells Fargo concealed that they would no longer be offering jumbo reverse mortgages to induce Plaintiffs to apply for a loan modification that Wells Fargo knew or should have known Plaintiffs would not be eligible for.

47.     Upon information and belief, Wells Fargo concealed that they would no longer be offering jumbo reverse mortgages to induce Plaintiffs to apply for a loan modification that Wells Fargo knew or should have known Plaintiffs could not afford.

48.     Upon information and belief, Wells Fargo concealed that they would no longer be offering jumbo reverse mortgages to induce Plaintiffs to apply for a loan modification that Wells Fargo knew or should have known would not contain the favorable loan terms Wells Fargo had promised to Plaintiffs.

49.     Wells Fargo made various misrepresentations of fact that they knew or should have known were false.

50.     Plaintiffs reasonably relied on Wells Fargo's negligent misrepresentations, to their detriment.

51.     Wells Fargo's predatory lending practices, misrepresentations they knew or should have known were false and their failure to fully disclose to Plaintiffs' the consequences of applying for a loan modification, resulted in a fraudulent concealment of the Plaintiffs' cause of action under Connecticut General Statutes § 52-595, thereby tolling any statute of limitations applicable to an action against Wells Fargo until the date Plaintiffs discovered that Wells Fargo engaged in said fraudulent misrepresentations and other predatory lending practices.

<u>**COUNT FOUR:  BREACH OF FIDUCIARY DUTY AS TO WELLS FARGO BANK, N.A. AND WELLS FARGO HOME MORTGAGE**</u>

1.      Paragraphs 1 through 41 of Count One of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 1 through 41 of Count Four.

42.      Paragraph 42 of Count Two of this Complaint is hereby incorporated by reference, as if fully set forth herein, and made paragraph 42 of Count Four.

43.      Plaintiffs had a lender-borrower relationship with Wells Fargo.

44.      Plaintiffs trusted Wells Fargo and sought its expertise and confidence in financing.

45.      Plaintiffs also made mortgage payments to Wells Fargo for years.

46.      In 2007, Plaintiffs trusted and confided in Wells Fargo when they signed an interest-only note and mortgage under the expectation that they could return for a jumbo reverse mortgage if it did not work for them.

47.      In 2008-2009, Plaintiffs trusted and confided in Wells Fargo when they returned for a jumbo reverse mortgage that they would have qualified for and instead were talked into applying for a loan modification.

48.     In all the years Plaintiffs engaged with Wells Fargo, pre-financing, pre-default and post-default, Plaintiffs trusted and confided in Wells Fargo and truly believed they would receive the loan terms Wells Fargo had promised them.

49.     Wells Fargo owed Plaintiffs a fiduciary duty.

50.     Wells Fargo owed a duty to Plaintiffs to not deceive them.

51.     Wells Fargo owed a duty to Plaintiffs to correctly apply the payments Plaintiffs made to their mortgage balance.

52.     Wells Fargo owed a duty to Plaintiffs to inform them that they would no longer be offering jumbo reverse mortgages, when Wells Fargo knew they had talked Plaintiffs out of a jumbo reverse mortgage and into applying for a loan modification under false pretenses.

53.     Wells Fargo owed a duty to Plaintiffs to fully disclose to them their internal policies for reviewing loan modifications, how they were calculating Plaintiffs' income and that ultimately, Plaintiffs' loan was not eligible for modification.

54.     Wells Fargo breached its fiduciary duty by deceiving Plaintiffs.

55.     Wells Fargo abused Plaintiffs' confidence by wrongfully using its position of superiority in order to obtain an unconscionable advantage over Plaintiffs.

56.     As a direct result of Wells Fargo's breach, Plaintiffs have suffered damages.

**COUNT FIVE:  FRAUD AS TO HSBC**

1.      Paragraphs 1 through 42 of Count One of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 1 through 42 of Count Five.

43.      Upon information and belief, the securitized trust entitled WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-8 (the "Pool"), closed on June 28, 2007 in accordance with its pooling and servicing agreement dated June 28, 2009 ("PSA").

44.      Upon information and belief, the PSA requires that for a loan to be in the Pool, it had to be submitted by a cut-off date of June 1, 2007.

45.      Upon information and belief, the PSA also requires that assignments effectuating the transfer of any loan into the Pool must be completed within *one year* of the Pool being closed.

46.      Upon information and belief, the PSA further requires that for *any* loan transferred into the Pool, the original note must be endorsed by a *dated* allonge stating the name and authority of the signor.

47.      Upon information and belief, Wells Fargo did not transfer the loan into the Pool by June 1, 2007.

48.     Wells Fargo did not execute an assignment of mortgage to the Pool, and therefore HSBC, until April 22, 2015, seven years too late to comply with the PSA.

49.     In the second foreclosure, HSBC produced a copy of the original note with a robo-signed allonge stating the name and authority of the signor, Joan M. Mills, however the allonge was *undated* as required by the PSA.

50.     HSBC had been unable to produce this endorsed note in the first foreclosure, resulting in a dismissal of its case.

51.     Despite the defects that prevent Plaintiffs' loan from being in the Pool, HSBC has maintained that Plaintiffs' loan is in fact in the Pool.

52.     HSBC has made knowingly false representations that Plaintiffs' loan is in the Pool.

53.     HSBC has made these knowingly false representations to induce the court and Plaintiffs to rely on them and believe that HSBC is the holder of the note, when in fact it is not.

54.     HSBC has committed fraud on the court and the court has relied on HSBC's misrepresentations to Plaintiffs detriment.

55.     HSBC's fraudulent misrepresentations have resulted in a fraudulent concealment of the Plaintiffs' cause of action under Connecticut General Statutes § 52-595, thereby tolling

any statute of limitations applicable to an action against HSBC until the date Plaintiffs

discovered that HSBC engaged in said fraudulent misrepresentations.

**COUNT SIX: WRONGFUL FORECLOSURE**

      1.      Paragraphs 1 through 42 of Count One of this Complaint are hereby incorporated

by reference, as if fully set forth herein, and made paragraphs 1 through 42 of Count Six.

      43.      Paragraphs 43 through 52 of Count Five of this Complaint are hereby

incorporated by reference, as if fully set forth herein, and made paragraphs 43 through 52 of

Count Six.

      53.      Plaintiffs do not owe HSBC money, nor have Plaintiffs defaulted on a loan with

HSBC.

      54.      HSBC wrongfully pursued a foreclosure action against Plaintiffs to their

detriment.

**COUNT SEVEN:  DEFAMATION OF TITLE AS TO HSBC**

      1.      Paragraphs 1 through 42 of Count One of this Complaint are hereby incorporated

by reference, as if fully set forth herein, and made paragraphs 1 through 42 of Count Seven.

43.     Paragraphs 43 through 52 of Count Five of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 43 through 52 of Count Seven.

53.     Paragraphs 53 through 54 of Count Six of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 53 through 54 of Count Seven.

54.     In pursuing the second foreclosure action against Plaintiffs, HSBC filed a Lis Pendens on the land records against the Property.

55.     The Lis Pendens claims that HSBC has an interest in the Property for Plaintiffs failure to pay monies owed to HSBC.

56.     In so doing, HSBC has defamed Plaintiffs' title to the Property to Plaintiffs' detriment.


**COUNT EIGHT: VEXATIOUS LITIGATION AS TO HSBC AND WELLS FARGO**

1.     Paragraphs 1 through 42 of Count One of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 1 through 42 of Count Eight.

43.     Paragraph 42 of Count Two of this Complaint is hereby incorporated by reference, as if fully set forth herein, and made paragraph 43 of Count Eight.

44.     Paragraphs 43 through 52 of Count Five of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 44 through 53 of Count Eight.

54.     Paragraphs 53 through 54 of Count Six of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 54 through 55 of Count Eight.

56.     HSBC did not have probable cause to pursue the first foreclosure action against Plaintiffs.

57.     Wells Fargo directly aided, abetted and/or assisted in HSBC's foreclosure actions against Plaintiffs.

58.     As a direct result of HSBC and Wells Fargo's actions, Plaintiffs have been damaged.

**COUNT NINE: CIVIL CONSPIRACY AS TO HSBC AND WELLS FARGO**

1.      Paragraphs 1 through 43 of Count One of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 1 through 43 of Count Nine.

44.     Paragraph 42 through 49 of Count Two of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraph 44 through 51 of Count Nine.

52.     Paragraphs 43 through 52 of Count Five of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 52 through 61 of Count Nine.

62.     Paragraphs 53 through 54 of Count Six of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 62 through 63 of Count Nine.

64.     Paragraphs 56 through 57 of Count Eight of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 64 through 65 of Count Nine.

66.     Wells Fargo and HSBC acted in concert to engage in unlawful acts against Plaintiffs, including but not limited to the dual tracking of HSBC foreclosing against Plaintiffs while Wells Fargo continued to process loan modifications with Plaintiffs.

67.     Plaintiffs have been damaged as a result of Wells Fargo and HSBC's formed conspiracy.


**COUNT TEN: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

1.     Paragraphs 1 through 43 of Count One of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 1 through 43 of Count Ten.

44.     Paragraph 42 through 49 of Count Two of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraph 44 through 51 of Count Ten.

52.     Paragraphs 43 through 52 of Count Five of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 52 through 61 of Count Ten.

62.     Paragraphs 53 through 54 of Count Six of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 62 through 63 of Count Ten.

64.     Paragraphs 56 through 57 of Count Eight of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 64 through 65 of Count Ten.

65.     Over the past ten years, Plaintiffs have suffered anxiety, nervousness and anguish as a result of Wells Fargo's actions and HSBC's actions.

66.     The turbulence of loan modification, lies, delays, broken promises and foreclosure actions have put a strain on the Plaintiffs' marriage, have affected Plaintiffs' relationships with their children and brought Plaintiffs to seek medical treatment for their distress.

67.     Wells Fargo and HSBC knew or should have known that their actions involved an unreasonable risk of causing emotional distress and harm to Plaintiffs.

68.     Wells Fargo and HSBC's actions have in fact resulted in Plaintiffs' severe emotional distress.

**COUNT ELEVEN: CUTPA AS TO ALL DEFENDANTS**

1.      Paragraphs 1 through 43 of Count One of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 1 through 43 of Count Eleven.

44.     Paragraphs 42 through 49 of Count Two of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 44 through 51 of Count Eleven.

52.     Paragraphs 35 through 40 of Count Four of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 52 through 57 of Count Eleven.

51.     Paragraphs 35 through 45 of Count Five of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 51 through 61 of Count Eleven.

62.     Paragraphs 46 through 47 of Count Six of this Complaint are hereby incorporated by reference, as if fully set forth herein, and made paragraphs 62 through 63 of Count Eleven.

64.     Wells Fargo's operations as a lender, offering loans and workouts, accepting payments and offering services to consumers, demonstrate participation in the conduct of trade or commerce.

65.     HSBC's operations as trustee of a mortgage backed security entitled to foreclose against consumers, demonstrate participation in the conduct of trade or commerce.

66.     Wells Fargo acted unfairly and against established concepts of fairness when it:

     i.   abused Plaintiffs' confidences and steered them away from a jumbo reverse mortgage;

    ii.   encouraged Plaintiffs to apply for a loan modification when it knew or should have known that it could not offer the favorable terms as promised;

   iii.   misrepresented that Plaintiffs could come back for a jumbo reverse mortgage at any time;

    iv.   took advantage of Plaintiffs' age, equity in their home and fixed income;

     v.   failed to inform Plaintiffs that the loan product they wanted and qualified for was being phased-out by Wells Fargo;

    vi.   failed to inform Plaintiffs that their loan didn't qualify for HAMP modification;

      vii.  failed to appropriately apply payments made by Plaintiffs to the principal balance owed;

    viii.  didn't allow Plaintiffs to use the open-end provision and apply $13,000.00 of paid off principal on their mortgage, which would have brought Plaintiffs current and out of default;

       ix.  continued to process Plaintiffs' applications for loan modifications while Plaintiffs were being foreclosed against by another party;

       x.  arbitrarily calculated Plaintiffs' income, debt, and debt-to-income ratios without explanation to Plaintiffs; and

      xi.  aiding, abetting and assisting HSBC in foreclosing against Plaintiffs.

67.    HSBC acted unfairly and against established concepts of fairness when it initiated a foreclosure action against Plaintiffs' without being the holder or owner of the note, failed to participate in foreclosure mediation sessions, delayed prosecution for over five years, and engaged in dilatory tactics designed to increase the interest, fees and penalties Plaintiffs' would owe on their loan.

68.    Wells Fargo and HSBC's actions were immoral, unethical, oppressive and unscrupulous.

69.    Wells Fargo and HSBC's actions have caused substantial injury to Plaintiffs.

**WHEREFORE**, the Plaintiffs claim:

    (a)    Money damages:

    (b)    Punitive damages;

    (c)    Treble damages;

    (d)    Attorney fees;

    (e)    Costs;

    (f)    Interest; and

    (g)    Any such other and further relief the Court deems proper.


Respectfully Submitted,

PLAINTIFFS,
LESLIE NATHAN, LYNNE NATHAN,
AND LYNNE W. NATHAN, TRUSTEE


By:   /s/ 429329
    JENNIFER E. MIRA, ESQ.
    KEILY MIRA LAW
    968 Farmington Ave, Ste 208
    West Hartford, CT 06107
    Tel. 860-251-9552
    Fax 860-838-0409
    Juris No. 433252

RETURN DATE: OCTOBER 16, 2018      :      SUPERIOR COURT

LESLIE AND LYNNE NATHAN      :      J.D. OF MIDDLESEX

V.      :      AT MIDDLETOWN

WELLS FARGO HOME MORTGAGE,      :      SEPTEMBER 28, 2018
WELLS FARGO BANK, N.A., HSBC BANK USA,
NATIONAL ASSOCIATION AS TRUSTEE FOR
WELLS FARGO ASSET SECURITIES CORPORATION,
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2007-8

## AMOUNT IN DEMAND

     The amount, legal interest or property in demand is in excess of FIFTEEN THOUSAND

($15,000.00) DOLLARS, exclusive of interest and costs.


            Respectfully Submitted,

            PLAINTIFFS,
            LESLIE NATHAN, LYNNE NATHAN,
            AND LYNNE W. NATHAN, TRUSTEE


            By:____/s/ 429329_____
               JENNIFER E. MIRA, ESQ.
               KEILY MIRA LAW
               968 Farmington Ave, Ste 208
               West Hartford, CT 06107
               Tel. 860-251-9552
               Fax 860-838-0409
               Juris No. 433252